IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT GREEN,  CV-05-6034-KI

        Plaintiff,  OPINION AND ORDER

  v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

---

    MARK MANNING
    474 Willamette, Suite 200
    Eugene, OR 97401

        Attorney for Plaintiff

    KARIN J. IMMERGUT
    United States Attorney
    District of Oregon

NEIL EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

JOANNE E. DANTONIO
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075

Attorneys for Defendant

KING, Judge:

## **BACKGROUND**

Plaintiff, Scott Green (Green), brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), and Supplemental Security Income (SSI) under Title XVI of the Act.  42 U.S.C. § 1383©)(3).  This court has jurisdiction under 42 U.S.C. § 405(g).

Green filed an application for DIB on February 5, 2001, and an application for SSI on January 24, 2003.  In both applications he alleged a disability onset date of February 13, 1994, based on acute dermatitis of the hands.  In addition to the instant applications, Green applied for, and was denied DIB on three previous occasions.  At the time of the Administrative Law Judge's (ALJ) final decision in this case Green was 42 years old.  He has a high school education, and past work experience as a caregiver, gas station attendant, store clerk, auto dealer, newspaper inserter, kitchen worker, and taproom attendant and server.

On appeal to this court, Green claims the ALJ erred by: (1) providing legally insufficient reasons to discredit his testimony; (2) failing to properly consider whether Green's impairment met or equaled a Listed Impairment, at step three of the sequential evaluation; and (3) failing to meet his burden, at step five of the sequential evaluation, of identifying jobs Green could still do despite his impairment.

For the reasons that follow, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

## STANDARD OF REVIEW

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the

evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1512, 416.912. Each step is potentially dispositive.

Here, at step one the ALJ found that Green had not engaged in substantial gainful activity since his alleged disability onset date. See 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two the ALJ found that Green had a "severe" history of dermatitis, as defined by the regulations. See 20 C.F.R. §§ 404.1520©); 416.920©).

At step three the ALJ found Green's impairments did not meet or equal a Listed Impairment, codified at 20 C.F.R. Part 404, Subpart P, Appendix 1, considered so severe as to automatically constitute a disability. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The ALJ determined that Green had the residual functional capacity (RFC) to do all exertional levels of work, limited by: no hand contact with water or cleaning products, limited gripping, only slow keyboarding, and no food preparation or hand-to-hand interaction with others. See 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1545, 416.945, 404.1567, 416.967.

At step four the ALJ found Green could not return to his past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At step five the ALJ found Green remained capable of performing other work, existing in significant numbers in the national economy, such as officer helper, photocopy machine operator, and wire worker.  See 20 C.F.R. §§ 404.1520(a)(4)(v), 16.920(a)(4)(v).

## DISCUSSION

**I.      Substantial Evidence supports the ALJ's credibility assessment.**

Green alleges that ALJ wrongly rejected his testimony on the basis that he had not seen a physician for dermatitis for nearly three years, and his spotty work history raised concerns about secondary gain motives.

The ALJ is not required to credit every allegation of disabling pain or else disability benefits would be available on demand.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  However, if the ALJ determines that a claimant is not credible he must give specific reasons, supported by substantial evidence in the record, indicating that he has not arbitrarily discredited a claimant's testimony.  See Thomas v. Barnhart, 278 F. 3d 947, 958-59 (9th Cir. 2002).

In assessing a claimant's credibility, the ALJ may consider:  (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication.  See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ found Green's testimony less than fully credible for three reasons. First, none of Green's treating or examining physicians assessed work related limitations consistent with disability. The only limitation endorsed by a physician was to avoid "wet work."

Second, Green's medical record did not support his allegation that he had been disabled by dermatitis since February, 1994. His last treatment for dermatitis was in April, 2001, yet at the hearing in February, 2003, Green testified that he experienced "incredible, throbbing pain," on a daily basis due to dermatitis, which he rated as an 8 or 9 on a scale of 1 through 10, 10 being the worst pain he had ever experienced. The ALJ found this rating exaggerated, considering that he hadn't sought medical treatment for almost two years, and the record showed that his flare-ups were usually minor, isolated events. For instance, after working steadily as a dishwasher at a restaurant, in August, 2000, Green's skin problems were exacerbated by chemical detergents and water exposure. However, the medical record shows that this problem resolved by March, 2001, consistent with his last doctor's visit in April, 2001. Thus, the ALJ concluded that Green's subjective reporting about the severity and duration of his skin problems was not reliable.

Citing <u>Gamble v. Chater</u>, 68 F.3d 319, 321 (9th Cir. 1995), Green argues that his failure to seek medical care should not be used against him because he could not afford it. In <u>Gamble</u> the Court considered whether disability benefits could be denied to a claimant who met the disability criteria, but whose impairment would be "reasonably remediable" if she followed prescribed treatment. The Court found that benefits may not be denied a claimant, pursuant to 20 C.F.R. §§ 404.1530 and 416.930, if she is unable to afford the treatment that would remedy her disability.

Green's situation is different than <u>Gamble</u> because the ALJ did not find him disabled only to deny benefits due to his failure to follow prescribed medical treatment. Rather, the ALJ

considered Green's lack of medical treatment as one, among many, reasons to question his credibility. See Fair v. Bowen, 885 F.2d 597, 605 (9th Cir.1989)(finding it appropriate to consider "an unexplained, or inadequately explained, failure to seek treatment"). However, the ALJ's non-disability determination was based on more than just the fact that Green's subjective complaints were not credible, but also on the lack of medical evidence to support a finding of disability.

Further, as the Commissioner correctly points out, at the time Green was last treated at Oregon Health Sciences University (OHSU) for dermatitis, he was insured by Hartford Insurance, yet he did not return for any further treatment. A letter from treating physician, Marcos Antezana, M.D., dated April 24, 2001, states:

> As of March 19, 2001, we anticipated that with adequate treatment of his irritant contact hand dermatitis with triamcinolone 1% ointment twice daily and moisturization [sic] with plain Vaseline only and the use of Cetaphil cleanser without water...Mr. Green's hand dermatitis would resolve in approximately 1 month. We have not seen him in our clinic since that time and cannot comment on his current level of hand dermatitis at the time of this dictation.

Thus, the ALJ reasonably inferred that Green did not return for treatment because his condition cleared up, not because he couldn't afford treatment.

Third, although Green testified that his functioning is "limited" when he is on pain medication for his decaying teeth, the ALJ found these incidents to be infrequent and brief. Notably, the ALJ did not find Green suffered from a "severe" dental impairment, and Green does not contest this finding.

Finally, the ALJ noted that given Green's minimal work history, his multiple applications for disability benefits appeared to be associated with a lack of motivation to work. In support of this finding the ALJ cited Green's earnings record, which reflect sparse earnings even before his

Page -7- OPINION AND ORDER

alleged onset of disability in February, 1994, and no earnings whatsoever between 1995 and 1999, without corresponding medical evidence of dermatitis flare-ups.

Green argues his work history is consistent with a person who suffers from chronic, disabling dermatitis because each time he has a flare-up he loses his job, and has to wait until it subsides to find new work. However, this contention is undermined by his earnings history, which reflects a four-year period of no earnings at all, as noted by the ALJ. Thus, it was reasonable for the ALJ to find that Green's spotty work history reflects negatively upon his credibility.

In sum, I find the ALJ reasonably rejected Green's testimony, and provided legally sufficient reasons for doing so, based on substantial record evidence.

**II. Substantial evidence supports the ALJ's step three finding that Green's impairment does not meet or equal a Listed impairment.**

Green alleges the ALJ failed to properly assess whether his dermatitis met or equaled a Listed Impairment (Listing), codified at 20 C.F.R. Part 404, Subpart P, Appendix 1, considered so severe as to automatically constitute a disability. At step three, the claimant has the burden of showing through medical evidence that his impairments "meet all of the specified medical criteria" contained in a particular listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. §§ 404.1520(d), 416.920(d).

Green contends that he meets Listing 8.05, because he had extensive skin lesions that persisted for at least three months despite continuing treatment as prescribed. The Commissioner argues that the ALJ properly determined that Green did not meet a Listing, and in any event, Green incorrectly references the 2005 version of the Listings in his memorandum.

Indeed, at the time of the ALJ's decision on March 13, 2004, the 2003 version of the Listings applied. They read, in relevant part:

### 8.00 SKIN

A. *Skin lesions* may result in a marked, long-lasting impairment if they involve extensive body areas or critical areas such as the hands or feet and become resistant to treatment. These lesions must be shown to have persisted for a sufficient period of time despite therapy for a reasonable presumption to be made that a marked impairment will last for a continuous period of at least 12 months.

8.05 *Psoriasis, atopic dermatitis, dyshidrosis*. With extensive lesions, including involvement of the hands and feet which impose marked limitation of function and which are not responding to prescribed treatment.

(emphasis in original).

The ALJ found Green did not meet this or any other Listing. Before making this finding the ALJ thoroughly reviewed the medical evidence, which indicated that Green's most serious flare-up of dermatitis on his hands and forearms occurred in August, 2000. At that time he was diagnosed with contact related dermatitis "likely due to cleaning solutions and /or detergents" from working as a dishwasher at a restaurant. Cream was applied to Green's hands, and he was advised to keep his hands dry, and to use cream inside rubber gloves for work. Within one month his condition had improved, and by October, 2000, it was "much, much better," according to Kathleen Brown, M.D. In a follow-up visit, Green told Dr. Brown that his condition had cleared, but flared back up again because "he was not wearing gloves at work." Dr. Brown told Green "he absolutely must wear gloves at work."

By December, 2000, Dr. Brown agreed that Green should not be working in a restaurant at that time because he was having difficulty consistently using gloves, or the gloves would break. In February and March, 2001, Green was evaluated at OHSU by Marcos Antezana, M.D.,

a dermatologist. Dr. Antezana adjusted Green's ointments and told him he could return to work if he completely avoided contact with water. As noted above, Dr. Antezana anticipated that Green's symptoms would resolve in a month if he followed prescribed treatment. There are no other medical records regarding treatment of dermatitis since that time.

Green does not quibble with the ALJ's finding that no physician ever endorsed disability, let alone assessed him with a marked level of impairment. Yet he asks this court to find that he did have a marked impairment based on his testimony that he had difficulty eating, doing dishes and chores, working on his automobile, and taking a shower. The law does not support such an exercise. The burden was on Green to prove to the ALJ that his dermititis cause a marked limitation of function, which was not responding to prescribed treatment, and which was reasonably expected to last for a continuous period of at least 12 months. I find the ALJ reasonably determined that Green failed to meet this burden.

**III. Substantial evidence supports the ALJ's step five determination that Green is not disabled.**

Green alleges the ALJ erred at step five of the sequential evaluation by adopting the vocational expert's (VE) testimony that a hypothetical worker with Green's age, education, work history, and residual functional capacity (RFC) could perform work as an office helper, photocopy operator, and wireworker. Green argues that it is "unclear how these positions could be performed if plaintiff had periodic bleeding of his hands during a flare of dermatitis as found by the ALJ."

At step five of the sequential evaluation, the Commissioner must show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d at 1043. The Commissioner can satisfy this burden either by applying the guidelines at 20 C.F.R. § 404,

Page -10- OPINION AND ORDER

Subpt. P, App. 2, or by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. Id. If a claimant has functional limitations or work restrictions which prevent him from performing the full range of work at a given exertional level, the guidelines cannot be used at step five to determine whether he is disabled. Instead, the ALJ must elicit testimony from a VE to determine whether jobs exist in the national economy that the claimant can perform despite his limitations and restrictions. Tacket v. Apfel, 180 F.3d 1094, 1103-04 (9th Cir. 1999).

While a VE may be used to provide more specific information about the requirements of a particular job as it is performed in a particular setting, the ALJ relies primarily on the Department of Labor publication Dictionary of Occupational Titles (DOT) including its companion publication, Selected Characteristics of Occupations, for information about the requirements of work. 20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00(b); see also SSR 00-4p. These references classify occupations by exertional level, as defined in 20 C.F.R. §§ 404.1567, 416.967, and by skill level, as defined in 20 C.F.R. §§ 404.1568, 416.968.

Here, the ALJ elicited the expert opinion of a VE, rather than apply the guidelines, because he found Green's RFC[1] would not allow him to perform a full range of work. Instead, the ALJ asked the VE whether an individual with Green's vocational profile could perform a significant number of jobs in the national economy. The VE testified that he could, and explained what they entailed.

---

[1] At the hearing Green agreed that the ALJ properly assessed him with the RFC for all exertional levels of work, but limited by: the need to avoid water and cleaning products on his hands, the need to avoid gripping, food preparation, and hand-to-hand interaction with others, and only slow keyboarding.

Page -11- OPINION AND ORDER

Contrary to Green's contention in his memorandum, he was represented at the hearing, by his non-lawyer sister, and both he and his sister were given ample opportunity to question the VE. They asked the VE about the prevalence of jobs in the area where he lived, about the need to "multi-task" at work, and about the effect Green's poor appearance would have on his employability. The VE and the ALJ politely explained that none of these factors were relevant to the disability determination. Although no one asked the VE what affect periodic bleeding of the hands would have on the performance of the jobs the VE identified, no error resulted because this limitation was not part of Green's RFC. Neither did his RFC include handling or fingering restrictions, as Green contends.

Accordingly, I find the ALJ properly accounted for Green's limitations that were supported by substantial evidence in the record, and rejected those that were not, in posing the hypothetical question to the VE. See Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Thus, the VE's responses to this question were reliable, and were properly adopted by the ALJ to find Green remains capable of performing a significant number of jobs in the national economy.

## CONCLUSION

Based on the foregoing, the Commissioner's final decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this __4th__ day of January, 2006.

                                               /s/ Garr M. King
                                               Garr King
                                               United States District Judge